IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARA D.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

Defendant.

No. 6:24-cv-1147-HL

OPINION & ORDER

HALLMAN, Magistrate Judge:

Plaintiff Sara D. brings this action under the Social Security Act (the "Act"), 42 U.S.C. §

405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the

"Commissioner"). The Commissioner denied Plaintiff's application for Disability Insurance

Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq*. The Court has jurisdiction

over this matter pursuant to 42 U.S.C. § 405. For the following reasons, the Commissioner's

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

decision is REVERSED, and this case is REMANDED for immediate calculation and payment of benefits.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.    Plaintiff's Application

Plaintiff alleges disability based on the combined effects of her diabetes, high cholesterol, torn tendons in her left shoulder, depression, anxiety, and agoraphobia. Tr. 263.[2] At the time of Plaintiff's alleged onset date, September 18, 2019, she was 40 years old. Tr. 227-28. Plaintiff applied for DIB in September, 2021, alleging disability beginning September 18, 2019. Tr. 227-28. Her applications were denied initially and on reconsideration. Tr. 115-37. Plaintiff subsequently requested a hearing, which was held on September 12, 2023 before Administrative Law Judge (ALJ) Bill Laskaris. Tr. 51-77. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 51-77. On October 10, 2023, the ALJ issued a decision denying Plaintiff's claims. Tr. 27-46. Plaintiff requested Appeals Council review, which was denied on May 15, 2024. Tr. 1-7. Plaintiff then sought review before this Court.[3]

### II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[2] Citations to "Tr." are to the Administrative Record, ECF No. 8.

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. ECF No. 1.

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 18, 2019, the alleged onset date. Tr. 32. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: Major depressive disorder, bipolar; Generalized anxiety disorder/agoraphobia; Diabetes; Obesity; Degenerative disc disease of the cervical spine; Degenerative joint disease of the left shoulder. Tr. 32-33. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 33. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform medium work as defined in 20 CFR 404.1567(c) as lifting/carrying 50 pounds occasionally and 25 pounds frequently, standing/walking six of eight hours and sitting six of eight hours. However, the claimant also has the following additional limitations: occasional left overhead reach; frequent, but not constant, operation of foot controls; simple, routine and repetitive tasks performed in a low stress job defined as only occasional decision-making required, occasional changes in the work-setting, and no strict production rate requirements; no interaction with the public and occasional interaction with co-workers, supervisors.

Tr. 35.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 39. At step five the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as laundry worker, cleaner, and packer. Tr. 40. The ALJ therefore found Plaintiff not disabled. Tr. 41.

**DISCUSSION**

Plaintiff argues the ALJ committed three harmful errors. She contends the ALJ erred by (1) discounting her subjective symptom testimony without a clear and convincing reason for doing so, (2) rejecting lay witness testimony without a germane reason, and (3) improperly evaluating the medical opinions of William Morris, DNP, PMHNP, and Indra Dissanayake, LPC. For the reasons that follow, the Court finds the ALJ erred, and reverses.

## I.    Symptom Testimony

Plaintiff first asserts that the ALJ improperly rejected her subjective symptom testimony. Pl.'s Opening Br. at 3-11. This Court agrees.

### A.    Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing"

standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.    Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she reduced her work hours and began receiving short-term disability compensation as of her alleged onset date based on her psychiatrist's recommendation, and she stopped working in March 2020, at which time she began receiving long-term disability compensation due to worsened depression with suicidal ideation. Tr. 56, 60- 62, 70. Her anxiety was "overriding everything" at work; she was tearful and unable to take calls. Tr. 57. She had panic attacks at work. Tr. 62. She had not tried to return to work since that job ended. Tr. 57. She lived with her parents. Tr. 63. She was able to drive herself to equine therapy at a farm where her boyfriend worked. Tr. 63-64. She attended equine therapy for an hour or two four times a week. Tr. 64. She grocery shopped with her mother or boyfriend; she did not go alone because of panic attacks. Tr. 65. She did not have any friends. Tr. 65. She spent most of her time at home. Tr. 66. She testified that she could not be "reliable" or "consistent" to attend work daily because of her mental symptoms. Tr. 67. She received weekly, in-clinic Spravato treatments that put her in an altered mental status; she could not to drive for

twenty-four hours after each treatment. Tr. 70. She slept a lot when depressed. Tr. 70-71. She could not get out of bed at least half the days out of each month. Tr. 71. She struggled to attend early morning appointments. Tr. 71. She had word finding difficulties. Tr. 71.

In written testimony, Plaintiff reported experiencing periods when she was unable to leave her bed "for days at a time." Tr. 278. She experienced "[a]nxiety attacks at unexpected times, at work, in public, on the couch." Tr. 278. She was "[u]nable to remember to complete daily living requirements, ie medication, showers/self hygiene, food." Tr. 278. She was exhausted "all the time." Tr. 278. In a typical day, she woke, possibly watched television, took medications, ate meals that her partner prepared, napped, and attended medical appointments as scheduled. Tr. 279. She lacked motivation to bathe. Tr. 279. Her partner prepared her meals and reminded her to take her medications and complete personal care activities. Tr. 279-80. Plaintiff did not do any household chores. Tr. 280. She left home only when necessary; her anxiety worsened in public. Tr. 281, 282. She grocery shopped in store or via computer. Tr. 281. Her hobbies interests included quilting, crochet, cross stitch, writing, and photography, but she had not done any of these activities in years. Tr. 282. She socialized with others through texts and otherwise avoided engaging with others. Tr. 282. She struggled with low energy levels. Tr. 283. Her impairments impacted her ability to walk, talk, remember things, complete tasks, concentrate, understand, and follow instructions. Tr. 283. She could not follow spoken instructions, tolerate stress, or handle  changes in routine. Tr. 283-84.

Describing her physical symptoms, Plaintiff testified to left shoulder pain, but that she did not have difficulty using her non-dominant left arm. Tr. 68-69. The shoulder pain impacted her sleep. Tr. 69. She did not think she was limited in lifting and carrying but had not tried to lift much. Tr. 69. She also had neuropathy in her feet that limited her ability to stand and walk. Tr.

69. She also experienced aching and throbbing left shoulder pain that was exacerbated by changing positions, and which impacted her capacity to perform reaching activities. Tr. 275-76.

The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 36. Specifically, the ALJ discussed the objective medical evidence, Plaintiff's conservative course of treatment, and her activities of daily living when discounting her subjective symptom testimony. Tr. 35-36. This Court addresses each rationale in turn.

### C.    Objective Medical Evidence

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161; *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins*, 261 F.3d at 857, they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681).

In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, especially in the mental health context, an ALJ may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects long-standing psychological disability. *See Ghanim*, 763 F.3d at 1164; *see also Garrison*, 759 F.3d at 1017. Moreover, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Substantial evidence does not support the ALJ's decision to discount Plaintiff's mental health testimony for its purported conflict with the record. While conflict with objective medical evidence can be a sufficient basis for discounting a claimant's testimony, an ALJ may not disregard the forest by focusing on only a few trees. *Smartt*, 53 F.4th at 498. For example, the ALJ relied on a few "normal" objective findings from various points during the relevant period, and one December 2021 appointment where Plaintiff reported feeling "pretty good" with moderate depression levels, less anxiety, and generally good sleep. Tr. 36 (citing Tr. 523, 529, 542, 575). As an initial matter, the ALJ erred by failing to specify exactly which of Plaintiff's statements these records conflict with. Tr. 36 (noting "objective findings" were inconsistent with "significant complaints of anxiety."). When discounting testimony, an ALJ must "identify the testimony she found not credible," and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Citing "complaints of anxiety" does not clarify for this Court which of Plaintiff's statements are being discounted, and why; this is error. *Id.* The ALJ further erred by isolating a few "normal" objective findings from a record otherwise replete with evidence of more

significant mental health symptoms. *Compare* Def. Br. at 5-6 *with* Pl. Br. at 9-10. As such, the ALJ failed to supply legally sufficient reasoning to reject Plaintiff's testimony about her mental health on her subjective complaints alone.

The ALJ further erred in discounting Plaintiff's allegations of physical limitations because he identified objective medical evidence not actually inconsistent with Plaintiff's testimony. Plaintiff testified that her left shoulder pain impacted her ability to sleep, lie down comfortably, and reach. Tr. 275-76. The ALJ discounted this testimony by citing records showing Plaintiff's "normal strength in the upper extremities" and essentially normal imaging studies. Tr. 37. Plaintiff's testimony describes difficulties reaching and with lying down, not with strength, which does not conflict with the imaging or other objective evidence the ALJ cites. *Compare* Tr. 44-47 *with* Tr. 560. Because the medical evidence the ALJ cited does not conflict with Plaintiff's symptom testimony this was not a clear and convincing reason for the ALJ to rely upon to discount Plaintiff's allegations of physical limitations either.

### D.    Conservative Treatment

The ALJ also rejected Plaintiff's testimony concerning her mental health symptoms because the evidence demonstrated only conservative treatment. Tr. 36. Conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not as all-disabling as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's

subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ erred by rejecting Plaintiff's symptom testimony because her treatment for those symptoms was "conservative." While conservative treatment can be a sufficient reason to discount a Plaintiff's symptom testimony, the ALJ must provide more justification than he did here. The ALJ summarized Plaintiff's treatment as "overall conservative . . . , including medication and therapy." Tr. 36. He noted that she did not engage in "inpatient treatment . . . or intensive outpatient programs." Tr. 36. He also noted that Plaintiff "receives a nasal spray for depression." Tr. 36. Because the ALJ did not specify what more aggressive treatment options were appropriate or available, it would be illogical to discredit Plaintiff "for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010).

Moreover, the absence of a recommendation to pursue more aggressive treatment is typically a good reason for a plaintiff not to pursue more aggressive treatment. *See Alfredo C. v. Saul*, 2020 WL 836833, at *5 (D. Or. Feb. 20, 2020) ("The ALJ in this case does not cite any statement by a medical professional suggesting that Plaintiff's course of treatment was conservative."). The ALJ does not point to any recommendations Plaintiff failed to follow, or more significant treatment she should have pursued. *See* Tr. 36. Furthermore, the lack of inpatient hospitalization is not evidence of conservative treatment in the context of complex mental health disorders. *See, e.g., Choat v. Berryhill*, 2018 WL 2048332, at *5 (D. Or. Apr. 30, 2018) (so stating and collecting cases). Indeed, record in this case documents consistent, frequent psychiatric medication management and therapy with limited benefit such that Plaintiff's therapist eventually concluded that her depression was treatment resistant and referred her to

another provider. *See, e.g.*, Tr. 1237, 1092, 1109, 1107, 1083, 1062, 1050. For these reasons, the ALJ's conclusion that Plaintiff's subjective symptom testimony is undermined by a history of conservative treatment is not supported by substantial evidence.

### E.    Activities of Daily Living

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 36. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ failed to adequately identify transferable work skills or inconsistencies between Plaintiff's daily activities and symptom testimony, and therefore erred. The Ninth Circuit has instructed that a modest level of activity is not sufficient to reject subjective complaints. *Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking

for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled") (quoting *Fair*, 885 F.2d at 603). The ALJ found Plaintiff's "alleged severity of anxiety with panic attacks" inconsistent with her ability to "drive and spend[] 1-2 hours four times a week at equine therapy." Tr. 36. The ALJ further cited Plaintiff's ability to "eat[] in restaurants and shop[] in stores with family," "use[] a cellphone for the internet," "use[] a computer for shopping online, manage[] finances, and use[] a cellphone for texting." Tr. 36. He also noted evidence that Plaintiff "went to the gym to work out," asserted that she did this "three times a week," and also highlighted reports that she "walked her dogs most days." Tr. 36. The ALJ's discussion of Plaintiff's ability to use technology or leave the house with family failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see Dodrill*, 12 F.3d at 918. Nor do the activities the ALJ cites meaningfully conflict with Plaintiff's testimony about anxiety. Her ability to engage in some exercise during the relevant period or leave the home accompanied does not undermine the allegations of significant anxiety and depression, and their limitations on Plaintiff's ability to work. *See* Tr. 56-70. Other than summarizing Plaintiff's activities, the ALJ did not explain how the activities undermined Plaintiff's subjective symptom testimony about exertional limitations; the ALJ merely concluded that these activities were inconsistent with Plaintiff's allegations. Tr. 36. This was error.

In sum, the ALJ erred in rejecting Plaintiff's subjective symptom testimony because he failed to provide specific, clear, and convincing reasons as to why her testimony contradicted, or was undermined by, the objective medical record and her activities of daily living.

## II.    Lay Witness Testimony

Plaintiff next asserts that the ALJ improperly rejected lay witness testimony from Plaintiff's mother and sister without providing germane reasons for doing so. Pl. Br. at 19-20. This Court agrees.

### A.    Legal standards

Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694.[4] But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported

---

[4] The Court notes that this issue is currently under consideration in the Ninth Circuit. *See Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. March 7, 2025) (vacated and withdrawn, 2025 WL 1024393, at *1 (9th Cir. Apr. 7, 2025). Unless and until the Ninth Circuit provides contrary, binding guidance on the interpretation of the 2017 regulations, the Court will continue to require ALJs to state a germane reason for disregarding lay witness testimony. *Valentine*, 574 F.3d at 694.).

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

### B.    Analysis

The lay witness testimony from Plaintiff's mother and sister described mental and physical health-related limitations that tracked Plaintiff's own allegations. *See* Tr. 323-24, 328. The ALJ rejected the lay testimony for the same reasons he discounted Plaintiff's. *See* Tr. 35-37.

The ALJ did not rely on substantial evidence when disregarding Plaintiff's mother's and sister's testimony, and therefore erred. As discussed above, the ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective complaints, and these same rationales do not support the decision to discount the lay witness testimony either. The ALJ erred in rejecting the lay testimony in this case. *Garrison*, 759 F.3d at 1020-23.

## III.    Medical Opinion Evidence

Plaintiff also argues the ALJ did not properly consider William Morris, DNP, PMHNP, or Indra Dissanayake, LPC's medical opinions. Pl. Br. at 11-18.

### A.    Legal Standards

For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so,

the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). The supportability and consistency factors require ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support her or her medical opinion," and its consistency with other sources. 20 C.F.R. § 404.1520c(c)(1-2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding on this Court. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. *Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted).

## B.    Mr. Morris and Ms. Dissanayake's Medical Opinions

In February 2022, Mr. Morris reported in a written statement that he had been treating Plaintiff since October 2019 and saw her at least monthly for psychopharmacology and brief

therapy. Tr. 700. Relevant signs and symptoms included depressed mood and generalized anxiety. Tr. 701. Mr. Morris reported that Plaintiff became excessively anxious when working with others, which was paralyzing. Tr. 701. As a result, she experienced a depressed mood up to and including suicidal ideation. Tr. 701. Mr. Morris wrote, "I believe Plaintiff's symptoms are severe enough to prevent her from maintaining meaningful employment." Tr. 701.

Mr. Morris opined that when Plaintiff became anxious, her concentration was markedly impaired, and she would have marked limitations in the ability to understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; and understand and remember complex instructions. Tr. 702-03. She would have extreme limitations in the ability to carry out complex instructions and make judgments on complex work-related decisions. Tr. 703. She would have marked limitations in the ability to interact appropriately with the public and co-workers. Tr. 703. She would have extreme limitations in the ability to interact appropriately with supervisors and respond appropriately to usual work situations and changes in a routine work setting. Tr. 703-04. Mr. Morris noted that Plaintiff's anxiety symptoms affected her internal self-worth, resulting in increased depressed mood and, at times, suicidal ideation. Tr. 704. He opined that the limitations assessed had been present since January 1, 2020. Tr. 704. He opined that Plaintiff would be off task at least 15% of a workday due to impaired concentration and excessive fear/worry secondary to anxiety. Tr. 705. He further opined that Plaintiff would be absent more than four workdays per month due to excessive fear and worry, poor concentration, poor sleep, irritability, and occasional suicidal ideation. Tr. 705-06.

In February 2022, Ms. Dissanayake reported in a written statements that she met with Plaintiff weekly for individual counseling. Tr. 708. Her treatment was designed to improve and manage Plaintiff's mental symptoms. Tr. 708. Due to major depressive disorder, Plaintiff

experienced little interest or pleasure in doing things, felt down and depressed all the time, struggled with making decisions, experienced recurring suicidal ideation with a history of failed attempts, isolated from others, had trouble concentrating and remember things, and felt like a failure. Tr. 708. Due to generalized anxiety disorder, Plaintiff felt nervous or on edge, worried excessively, had trouble relaxing, was easily annoyed or irritable, and feared that something awful would happen. Tr. 708. She experienced recurring panic attacks related to perceived extremely stressful situations. Tr. 708. Due to social anxiety disorder, she was unable to be in crowds, needed to leave the store if there were people in the way of an item she wanted, was unable to attend coping skills groups due to fear that people were judging her, and had tense fear in any social situation. Tr. 708.

As a result, Ms. Dissanayake opined that Plaintiff would suffer several work-related limitations. For example, she has a very hard time interacting with the public, working with others due to suffering from Social Anxiety that can also cause sudden panic attacks. Struggling with constant anxiety leading to panic, are big barriers in following through any instructions, completing detailed tasks, paying attention and completing detailed/complex tasks. Client gets extremely anxious over simple routine changes leading to freezing and unable to function. Also, in addition to those challenges, Plaintiff is struggling with depressive symptoms that are making it difficult, to get up at a regular time and doing 8 hours job 5 times a week. Lack of motivation and fatigue would hinder any goal-settings, independent planning, decision making etc. Needing to withdraw, isolate from others and being irritable make it hard, to work with coworkers in a professional manner. Tr. 709.

The ALJ considered Mr. Morris and Ms. Dissanayake's medical opinions and rejected them as unpersuasive. Tr. 38. The ALJ found the opinions were "not supported by the treatment

of record," including Plaintiff's lack of inpatient treatment and her ability to complete many activities of daily living. *Id.*

An independent review of the record reflects that Mr. Morris and Ms. Dissanayake's opinions are amply supported by the record, and the ALJ failed to adequately analyze their supportability or consistency with the record. As explained, an ALJ may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects long-standing psychological disability. *See Ghanim*, 763 F.3d at 1164; *see also Garrison*, 759 F.3d at 1017. First, the two medical opinions are amply supported by the medical record, and consistent with much of the objective medical evidence. *See, e.g.* Tr. 479, 658 (dysthymic, anxious, or flat mood and affect), Tr. 658, 889 (impaired memory), Tr. 655, 1149 (limited attention and concentration), Tr. 609, 658 (limited to fair judgment and insight). And, the ALJ rejected the two medical opinions for the same reasons he discounted Plaintiff's subjective symptom testimony. *See* Tr. 38. As indicated above, substantial evidence does not support the bases the ALJ relied upon. Because the ALJ did not adequately analyze the supportability or consistency of the two medical opinions, and his stated bases for finding them unpersuasive are not supported by substantial evidence, the Court finds the ALJ erred by rejecting these medical opinions as well.

## III.    Remedy

Plaintiff asserts that this case should be remanded for immediate payment of benefits under the credit-as-true standard. Pl. Br. at 21. Applying the requisite standard, for the reasons set forth below, the Court finds that the credit-as-true standard is met.

### A.    Standard of Review

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of the Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Generally, where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," the district court should remand for payment of benefits. *Garrison*, 759 F.3d at 1020.

In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.*

Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in

fact, disabled[.] *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (internal quotations and citation omitted).

**B.    Analysis**

On the first prong, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler*, 775 F.3d at 1101 (internal quotations and citations omitted). Here, plaintiff has already attended and testified at an administrative hearing related to her application. Tr. 51-77. A vocational expert testified as well. *Id*. Plaintiff's medical record, including the additional evidence, contains her entire mental health history. Defendant has failed to "point[ ] to evidence in the record the ALJ overlooked," *Dominguez*, 808 F.3d at 407, and the Court finds none. The record is therefore fully developed, and there is no need to resolve any conflict or ambiguity.

The second prong is also satisfied because the ALJ committed harmful legal error. As discussed above, the ALJ erred by (1) improperly discrediting Mr. Morris and Ms. Dissanayake's medical opinions as to Plaintiff's mental health impairments; (2) failing to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony, and (3) failing to support the decision to reject lay witness testimony with substantial evidence.

As to the third prong, if the improperly discounted opinion evidence concerning Plaintiff's mental health limitations, along with Plaintiff's subjective symptom testimony were

credited as true, the ALJ would have to find Plaintiff disabled on remand. The vocational expert testified that a hypothetical individual who was absent two or more days or off task 15% or more of the workday would not be employable. Tr. 75. Based on the discounted evidence, Plaintiff is such a hypothetical individual. Accordingly, the ALJ would be required to find plaintiff disabled on remand.

Considering the record as a whole, the Court does not have serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1020–21 (citations omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021). Quite the contrary, the record – including Plaintiff's own testimony, that of her family, and the opinions of her mental health providers – conclusively demonstrates that Plaintiff's mental health conditions preclude her from sustaining employment.

Because plaintiff has satisfied the credit-as-true standard and the Court does not have serious doubt as to whether plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits.

## CONCLUSION

For the reasons given above, the Commissioner's decision is REVERSED and this case is REMANDED for calculation and payment of benefits.

DATED this  6th  day of May, 2025.

ANDREW HALLMAN
United States Magistrate Judge